# The Supreme Court of South Carolina

The Protestant Episcopal Church in the Diocese of South Carolina; The Trustees of The Protestant Episcopal Church in South Carolina, a South Carolina Corporate Body; All Saints Protestant Episcopal Church, Inc.; Christ St. Paul's Episcopal Church; Church Of The Cross, Inc. and Church Of The Cross Declaration Of Trust; Church Of The Holy Comforter; Church of the Redeemer; Holy Trinity Episcopal Church; Saint Luke's Church, Hilton Head; St. Bartholomew's Episcopal Church; St. David's Church; St. James' Church, James Island, S.C.; St. Paul's Episcopal Church of Bennettsville, Inc.; The Church Of St. Luke and St Paul, Radcliffeboro; The Church Of Our Saviour Of The Diocese of South Carolina; The Church Of The Epiphany (Episcopal); The Church Of The Good Shepherd, Charleston, SC; The Church Of The Holy Cross; The Church Of The Resurrection, Surfside; The Protestant Episcopal Church, Of The Parish Of Saint Philip, In Charleston, In The State Of South Carolina; The Protestant Episcopal Church, The Parish Of Saint Michael, In Charleston, In The State Of South Carolina and St. Michael's Church Declaration Of Trust; The Vestry and Church Wardens of St. Jude's Church of Walterboro; The Vestry And Church Wardens Of The Episcopal Church Of The Parish Of St. Helena and The Parish Church of St. Helena Trust; The Vestry and Church Wardens Of The Episcopal Church Of The Parish Of St. Matthew; The Vestry and Wardens Of St. Paul's Church, Summerville; Trinity Church of Myrtle Beach; Trinity Episcopal Church; Trinity Episcopal Church, Pinopolis; Vestry and Church Wardens Of The Episcopal Church Of The Parish Of Christ Church; Vestry and Church Wardens Of The Episcopal Church Of The Parish Of St. John's, Charleston County; The Vestries And Churchwardens Of The Parish Of St. Andrew, Respondents,

v.

The Episcopal Church (a/k/a, The Protestant Episcopal
Church in the United States of America); The Episcopal
Church in South Carolina, Appellants.

Appellate Case No. 2020-000986

---

ORDER

---

The Court received eight separate petitions for rehearing. On June 7, we denied one petition in its entirety and denied three petitions in part. We requested briefing on two arguments: (1) revocation based on subsection 62-7-602(a) of the South Carolina Code (2022), and (2) no trust was created because the language purporting to constitute accession existed in the bylaws or constitutions before 1979. After careful consideration of these two arguments in the remaining petitions for rehearing, we grant the following petitions for rehearing:

- The Church of the Holy Cross (Stateburg)

- The Church of the Holy Comforter (Sumter)

- The Vestry and Church Wardens of St. Jude's Church of Walterboro

- The Vestries and Churchwardens of the Parish of St. Andrew (Charleston)

- St. Luke's Church, Hilton Head

- Trinity Church of Myrtle Beach

We deny the following petition:

- The Church of the Good Shepherd (Charleston)

We dispense with further briefing and substitute the attached opinion.

s/ Donald W. Beatty                         C.J.

s/ John W. Kittredge                          J.

s/ John Cannon Few                           J.

s/ George C. James, Jr.                       J.

s/ James E. Lockemy                        A.J.

Columbia, South Carolina
August 17, 2022

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The Protestant Episcopal Church in the Diocese of South Carolina; The Trustees of The Protestant Episcopal Church in South Carolina, a South Carolina Corporate Body; All Saints Protestant Episcopal Church, Inc.; Christ St. Paul's Episcopal Church; Church Of The Cross, Inc. and Church Of The Cross Declaration Of Trust; Church Of The Holy Comforter; Church of the Redeemer; Holy Trinity Episcopal Church; Saint Luke's Church, Hilton Head; St. Bartholomew's Episcopal Church; St. David's Church; St. James' Church, James Island, S.C.; St. Paul's Episcopal Church of Bennettsville, Inc.; The Church Of St. Luke and St Paul, Radcliffeboro; The Church Of Our Saviour Of The Diocese of South Carolina; The Church Of The Epiphany (Episcopal); The Church Of The Good Shepherd, Charleston, SC; The Church Of The Holy Cross; The Church Of The Resurrection, Surfside; The Protestant Episcopal Church, Of The Parish Of Saint Philip, In Charleston, In The State Of South Carolina; The Protestant Episcopal Church, The Parish Of Saint Michael, In Charleston, In The State Of South Carolina and St. Michael's Church Declaration Of Trust; The Vestry and Church Wardens of St. Jude's Church of Walterboro; The Vestry And Church Wardens Of The Episcopal Church Of The Parish Of St. Helena and The Parish Church of St. Helena Trust; The Vestry and Church Wardens Of The Episcopal Church Of The Parish Of St. Matthew; The Vestry and Wardens Of St. Paul's Church, Summerville; Trinity Church of Myrtle Beach; Trinity Episcopal Church; Trinity Episcopal Church, Pinopolis; Vestry and Church Wardens Of The Episcopal Church Of The Parish Of Christ Church; Vestry and Church Wardens Of The Episcopal Church Of The Parish Of St. John's, Charleston

County; The Vestries And Churchwardens Of The Parish Of St. Andrew, Respondents,

v.

The Episcopal Church (a/k/a, The Protestant Episcopal Church in the United States of America); The Episcopal Church in South Carolina, Appellants.

Appellate Case No. 2020-000986

Appeal from Dorchester County
Edgar W. Dickson, Circuit Court Judge

Opinion No. 28095
Heard December 8, 2021 – Filed April 20, 2022

Re-filed August 17, 2022

**AFFIRMED IN PART, REVERSED IN PART**

Bert Glenn Utsey III, of Clawson Fargnoli Utsey, LLC, of Charleston; Kathleen Chewning Barnes, of Barnes Law Firm, LLC, of Hampton; Kathleen Fowler Monoc, of Monoc Law, LLC, of Charleston; and Thomas S. Tisdale Jr., of Law Offices of Thomas S. Tisdale, LLC, of Charleston, all for Appellant The Episcopal Church in South Carolina.

Allan R. Holmes Sr., of Gibbs & Holmes, of Charleston; David Booth Beers, of Washington DC; and Mary E. Kostel, of Alexandria, VA, all for Appellant The Episcopal Church.

C. Alan Runyan, of Runyan & Platte, LLC, of Beaufort, for Respondents Church of The Cross Declaration of Trust; Church of The Cross, Inc.; St. David's Church; The Church of Our Saviour of the Diocese of South Carolina; The Church of The Epiphany (Episcopal); The Protestant Episcopal Church in the Diocese of South Carolina; The Protestant Episcopal Church of The Parish of Saint Philip, in Charleston, in the State of South Carolina; The Protestant Episcopal Church, The Parish of Saint Michael, in Charleston, in the State of South Carolina; The Vestry and Church Wardens of St. Jude's Church of Walterboro; The Vestry and Church Wardens of The Church of The Parish of St. Helena and The Parish Church of St. Helena Trust; and Vestry and Church Wardens of The Episcopal Church of the Parish of St. John's, Charleston County. William A. Bryan, of Bryan & Haar, of Surfside Beach, for Respondent The Church of The Resurrection, Surfside. Thomas Christian Davis, of Harvey & Battey, PA, of Beaufort, for Respondent Christ St. Paul's Episcopal Church. Albert A. Lacour III, of Clawson & Staubes, LLC, of Charleston, for Respondent The Vestries and Churchwardens of The Parish of St. Andrews. Charles H. Williams, of Williams & Williams, of Orangeburg, for Respondents The Protestant Episcopal Church in the Diocese of South Carolina and The Trustees of The Protestant Episcopal Church in South Carolina. Susan Pardue MacDonald, of Nelson Mullins Riley & Scarborough, LLP, of Myrtle Beach, for Respondent Trinity Church of Myrtle Beach. G. Mark Phillips, of Nelson Mullins Riley & Scarborough, LLP, of Charleston, for Respondent The Protestant Episcopal Church of The Parish of Saint Philip, in Charleston, in the State of South Carolina. Peter Brandt Shelbourne, of Shelbourne Law Firm, of Summerville, for Respondent The Vestry and Wardens of St. Paul's Church, Summerville and Trinity Episcopal Church, Pinopolis. C. Pierce Campbell, of Turner Padget Graham & Laney, PA, of Florence, for Respondents All Saints Protestant Episcopal Church, Inc.;

St. Bartholomew's Episcopal Church; and The Church of The Holy Cross. James Kent Lehman, of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Respondent Trinity Church of Myrtle Beach. C. Mitchell Brown, of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Respondents The Protestant Episcopal Church in the Diocese of South Carolina and The Trustees of The Protestant Episcopal Church in South Carolina. Ivon Keith McCarty, of McCarty Law Firm, PC, of Charleston, for Respondent Christ St. Paul's Episcopal Church. Timothy O'Neill Lewis, of Gibbs & Holmes, of Charleston, for Respondent Trinity Episcopal Church. Henry E. Grimball, of Womble Bond Dickinson (US) LLP, of Charleston, for Respondent The Protestant Episcopal Church, The Parish of Saint Michael, in Charleston, in the State of South Carolina. Robert R. Horger, of Horger, Barnwell & McCurry, LLP, of Orangeburg, for Respondent Church of the Redeemer. Allan Poe Sloan III, of Pierce, Sloan, Wilson, Kennedy & Early, LLC, of Charleston, for Respondent Vestry and Church Wardens of the Episcopal Church of The Parish of Christ Church. Andrew Spencer Platte, of Runyan & Platte, LLC, of Beaufort, for Respondents Church of The Cross Declaration of Trust; Church of The Cross, Inc.; St. David's Church; The Church of Our Saviour of the Diocese of South Carolina; The Church of The Epiphany (Episcopal); Vestry and Church Wardens of The Episcopal Church of the Parish of St. John's, Charleston County; The Protestant Episcopal Church in the Diocese of South Carolina; The Protestant Episcopal Church of The Parish of Saint Philip, in Charleston, in the State of South Carolina; The Protestant Episcopal Church, The Parish of Saint Michael, in Charleston, in the State of South Carolina; The Trustees of The Protestant Episcopal Church in South Carolina; The Vestry and Church Wardens of St. Jude's Church of Walterboro; and The Vestry and Church Wardens of The Church of The Parish of St. Helena and The Parish Church of St. Helena Trust.

Thornwell F. Sowell III and Bess Jones DuRant, of Sowell & DuRant, LLC, of Columbia, for Respondent Church of the Holy Comforter. William Foster Gaillard, of Womble Bond Dickinson (US) LLP, of Charleston, for Respondent The Protestant Episcopal Church of The Parish of Saint Philip, in Charleston, in the State of South Carolina. Joseph C. Wilson IV, of Joseph C. Wilson Law Firm LLC, of Folly Beach, for Respondent Vestry and Church Wardens of the Episcopal Church of The Parish of Christ Church. William A. Scott, of Pedersen & Scott, PC, of Johns Island, for Respondent Holy Trinity Episcopal Church. Harry Roberson Easterling Jr., of Easterling Law Firm, PC, of Bennettsville, for Respondents St. David's Church and St. Paul's Episcopal Church of Bennettsville, Inc. Mark V. Evans, of Charleston, for Respondent St. James' Church, James Island, S.C. Edward P. Guerard Jr., of Mt. Pleasant, for Respondent Vestry and Church Wardens of the Episcopal Church of The Parish of Christ Church. Francis Marion Mack, of Saint Matthews, for Respondent The Vestry and Church Wardens of The Parish of St. Matthew. David B. Marvel, of Charleston; and David L. DeVane, of Summerville, both for Respondent The Church of St. Luke and St. Paul, Radcliffeboro. Henrietta U. Golding, of Burr & Forman LLP, of Myrtle Beach, for Respondents Saint Luke's Church, Hilton Head; The Protestant Episcopal Church in the Diocese of South Carolina; and The Trustees of The Protestant Episcopal Church in South Carolina. John Furman Wall III, of Mount Pleasant, for Respondent The Church of the Good Shepherd, Charleston, S.C.

——————

**JUSTICE FEW:** The dispute before the Court in this case is which church entity became the legal or beneficial owner of certain real and personal property after The Protestant Episcopal Church in the Diocese of South Carolina (Disassociated Diocese) and thirty-six individual Episcopal Parishes (Parishes) disassociated from The Episcopal Church in the United States of America (National Church). The dispute requires us to address two broad questions. First, who now owns the real

estate long-owned and occupied by the individual Parishes.  Second, who is now the beneficiary of a statutorily-created trust controlled by the Trustees of The Protestant Episcopal Church in South Carolina (Trustees).  The National Church and the Episcopal Church in South Carolina (Associated Diocese) contend this Court made a final decision as to who owns all the disputed property when the Court heard the case in 2015 and each Justice sitting on the Court in 2015 issued a separate opinion in 2017.  *See Protestant Episcopal Church in the Diocese of S.C. v. Episcopal Church*, 421 S.C. 211, 806 S.E.2d 82 (2017).  The Parishes disagree the Court made a final decision as to the real property occupied by twenty-nine Parishes—the first question—and contend the Court left much to be decided by the circuit court as to these Parishes.  The Disassociated Diocese and the Trustees agree the Court made a final decision as to real and personal property the Trustees formerly held in trust for the Lower Diocese—the second question—but they disagree what that decision was.

As to the second question, we agree with the National Church and the Associated Diocese that the 2017 Court decided the real and personal property held in trust by the Trustees is now held for the benefit of the Associated Diocese.  We will explain our holding on this point in Section IV of the opinion.[1]

The primary issue before the Court today, however, is the first question: whether the 2017 Court made a final decision as to all real property owned by the twenty-nine Parishes.  We hold it did not.  Thus, we proceed to review the merits of the circuit court's 2020 Parish by Parish determination as to which entity owns the disputed property.  We affirm in part and reverse in part.  As to some Parishes, we hold the circuit court correctly ruled the individual Parish retained ownership of its property.  As to other Parishes, we hold those Parishes created a trust in favor of the National Church and its diocese, now the Associated Diocese.  For those Parishes that created a trust before 2006, we hold the trust is irrevocable.  We hold two Parishes created a revocable trust and took the necessary steps for revocation.  As to the Parishes that created a trust which was not revoked, we direct that appropriate documentation be filed in the public record indicating the National Church and the Associated Diocese now own that real estate.  From our decision today, there will be no remand.  The case is over.

---

[1] The Disassociated Diocese raises a third question, the merits of which we do not address because we defer to the federal courts.  Our explanation of why we defer to the federal courts on this question may be found in Section V of the opinion.

## I.     Factual and Procedural History

Before 2010, the Lower Diocese in South Carolina (Lower Diocese) was a member of the National Church, and the Parishes were members of the Lower Diocese. In 2010, after doctrinal differences arose, the Lower Diocese disassociated from the National Church. The Lower Diocese became the Disassociated Diocese, which is not affiliated with the National Church. Thirty-six Parishes remained members of the Disassociated Diocese. Other parishes formed the Associated Diocese— organized after the split—and remained affiliated with the National Church. The collective 2017 opinions set forth in great detail the historical and factual background of the property dispute that resulted from the split. *Protestant Episcopal Church in the Diocese of S.C. v. Episcopal Church*, 421 S.C. 211, 806 S.E.2d 82 (2017). We refer readers to the 2017 opinions for more detailed discussion of that lengthy history.

In 2013, the Parishes, the Disassociated Diocese, and the Trustees filed this lawsuit in circuit court seeking a declaration that the National Church and the Associated Diocese "ha[ve] no legal, beneficial or equitable interest in any of [their] real and personal property" and that the Parishes alone are the lawful and rightful owners of the property. The plaintiffs' primary theory in that case was that—if the National Church or its diocese ever had any right to claim legal or beneficial ownership of the property—the Disassociated Diocese and the Parishes took the necessary steps to sever their relationship with the National Church, and those steps resulted in the Disassociated Diocese and the Parishes owning all the property.

The National Church and the Associated Diocese counterclaimed against the Disassociated Diocese and the Parishes, alleging ownership over the property and claiming, among other things, that the Parishes and the Disassociated Diocese had no authority to disassociate and, in the alternative, the Parishes held their property in trust for the benefit of the National Church and its diocese pursuant to a 1979 provision of Episcopal Church law called the "Dennis Canon." *See infra* note 4. The National Church also counterclaimed against the Trustees, alleging "all property held by or for the [Disassociated Diocese] is held and may only be used for the mission and benefit of the Church and its subordinate [Associated Diocese]."

Judge Diane Schafer Goodstein conducted a non-jury trial in 2014 and found the Parishes and the Disassociated Diocese "validly exercise[d] [their] legal and

constitutionally-protected right to disassociate," and the National Church and the Associated Diocese never had any rights in the property held by the Trustees. Judge Goodstein also ruled the Parishes did not create a trust in favor of the National Church or its diocese. Judge Goodstein thus ruled the National Church and the Associated Diocese had "no legal, beneficial or equitable interest" in any of the real or personal property.

The National Church and the Associated Diocese appealed. This Court heard oral argument in the case in September 2015. In August 2017, each of the five Justices who served on the Court at the time of oral argument (the 2017 Court) filed separate opinions. 421 S.C. 211, 806 S.E.2d 82. The collective result of the five opinions is the central issue before the Court as to both of the broad questions we address in this appeal.

We issued an opinion on April 20, 2022, answering both broad questions. Eight Parishes filed petitions for rehearing. On June 7, 2022, we denied the petitions on all issues except as to (1) the effect of subsection 62-7-602(a) of the South Carolina Code (2022), which became effective January 1, 2006, and (2) the significance of the fact the alleged accession language for four Parishes was added to the Parish's governing documents before the Dennis Canon was adopted in 1979. In the June 7 order, we directed the parties to brief these two issues. We now grant six petitions for rehearing as to those two issues, and revise our answer to the first broad question as to those six Parishes. The six Parishes are discussed in Subsection III.B.vii and the final paragraph of Subsection III.E. Our answers to the second broad question and all other questions are unchanged.

## II.     First Question before this Court—Ownership of Parish Real Estate

Judge Goodstein focused primarily on the issues of corporate control of the Parishes, the Disassociated Diocese, and the Trustees; the Parishes' claim that they never had any relationship with the National Church; and the Disassociated Diocese's right to disassociate from the National Church. As to whether the Parishes held their property in trust for the National Church or its diocese, Judge Goodstein ruled "The Dennis Canon created no express trust of which [the National Church or its diocese] was the beneficiary." Under Judge Goodstein's ruling, the National Church and the Associated Diocese cannot rely on the Dennis Canon to claim a Parish created a trust. The five opinions of 2017 seemingly affirmed Judge Goodstein on the Parishes' and the Disassociated Diocese's rights to no longer follow or be associated

with the National Church.   However, the collective opinions reversed Judge Goodstein's ruling that the Dennis Canon cannot give rise to a trust.  In reversing, this Court collectively ruled that any Parish that expressly "acceded" to the Dennis Canon created a trust in favor of the National Church and its diocese.  As Chief Justice Beatty explained in his opinion, Parishes that "merely promised allegiance" to the National Church did not create a trust.  421 S.C. at 251, 806 S.E.2d at 103 (Beatty, C.J., concurring in part and dissenting in part).[2]  Because Judge Goodstein had not considered which individual Parishes acceded to the Dennis Canon or which "merely promised allegiance," the 2017 Court did not reach that issue.  It was proper, therefore, for the circuit court (Edgar W. Dickson) to address this question in its 2020 decision, and it is now proper for us to review Judge Dickson's 2020 Parish by Parish rulings.[3]

---

[2] Chief Justice Beatty addresses the collective meaning of the five opinions of 2017 in his separate writing concurring in today's holding.

[3] The five opinions of 2017 made a final decision that seven of the original thirty-six Parishes did not create a trust in favor of the National Church or its diocese. Those Parishes are no longer in the case, but we list them here for clarity.  The following Parishes hold title to their property unencumbered by any trust in favor of the National Church or the Associated Diocese:

- Christ the King, Waccamaw;
- St. Matthews Church, Darlington;
- Parish of St. Andrews, Mount Pleasant (and its Land Trust, a separate corporation);
- The Vestries and Churchwardens of the Parish of St. Paul's Episcopal Church of Conway;
- The Episcopal Church of the Parish of Prince George Winyah, Georgetown;
- St. John's Episcopal Church of Florence; and
- St. Matthias Episcopal Church, Summerton.

### III.     Express Accession to the Dennis Canon

The five opinions of the 2017 Court left open the question of what actions by the Parishes are necessary to constitute express accession to the Dennis Canon; thus, we must make that determination.  Before we can determine whether the actions of the individual Parishes constitute accession to the Dennis Canon and, thus, created a trust in favor of the National Church or its diocese, we first consider the background in which the Dennis Canon was written and adopted, which provides context for the actions by the individual Parishes.  We must also consider the requirements of South Carolina trust law.

### A.     Background of Dennis Canon

We begin in 1979 with *Jones v. Wolf*, 443 U.S. 595, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979).  *Jones* involved a property dispute between the Presbyterian Church in the United States of America (PCUSA) and a local Georgia church that had withdrawn from PCUSA.  443 U.S. at 598, 99 S. Ct. at 3023, 61 L. Ed. 2d at 781.  A majority faction of the local church voted to split from PCUSA and that faction continued to occupy the church property.  *Id.*  The remaining minority sued the majority faction arguing the minority owned the property as remaining members of PCUSA.  *Id.*  The Georgia Supreme Court held the trial court correctly applied Georgia law—instead of ecclesiastical law—and rejected the minority's claim to the property.  443 U.S. at 599, 99 S. Ct. at 3023, 61 L. Ed. 2d at 782.  The issue before the Supreme Court of the United States was "whether civil courts, consistent with the First and Fourteenth Amendments to the Constitution, may resolve the dispute on the basis of 'neutral principles of law,' or whether they must defer to the resolution of an authoritative tribunal of the hierarchical church."  443 U.S. at 597, 99 S. Ct. at 3022, 61 L. Ed. 2d at 780-81.

After the Supreme Court majority ruled a court may rely on neutral principles of state law and need not defer to ecclesiastical law, 443 U.S. at 602, 604, 99 S. Ct. at 3025, 3026, 61 L. Ed. 2d at 784, 785, the Court discussed the advantages of the neutral principles of law approach.  The Court stated, "it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity.   The method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges."  443 U.S. at 603, 99 S. Ct. at 3025, 61 L. Ed. 2d at 784-85.  The Supreme Court explained,

"Through appropriate . . . trust provisions, religious societies can specify what is to happen to church property in the event of a particular contingency, or what religious body will determine the ownership in the event of a schism or doctrinal controversy." 443 U.S. at 603, 99 S. Ct. at 3025, 61 L. Ed. 2d at 785.  The Court suggested, "At any time before [a] dispute erupts, the parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property. . . .  [T]he constitution of the general church can be made to recite an express trust in favor of the denominational church."  443 U.S. at 606, 99 S. Ct. at 3027, 61 L. Ed. 2d at 786. The Court concluded that "civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form." *Id.*

In the months after *Jones*, Walter Dennis—a priest and a member of the National Church's Standing Committee on Canons[4]—proposed Canon I.7.4[5] at the National Church's 1979 General Convention.  Bernie D. Jones, *Litigating the Schism and Reforming the Canons: Orthodoxy, Property & the Modern Social Gospel of the Episcopal Church*, 42 Golden Gate U. L. Rev. 151, 186 (2012).  The National Church adopted the proposed Canon I.7.4, which came to be known as the "Dennis Canon."  The National Church appears to have adopted the Dennis Canon for two primary reasons.  First, the National Church was concerned by local churches' negative response to the new Book of Common Prayer and the amendment to other

---

[4] According to the National Church, the word "canon" is synonymous with "Church Law," and they "are the written rules that provide a code of laws for the governance of the church."  *Canon*, *An Episcopal Dictionary of the Church*, The Episcopal Church,  https://www.episcopalchurch.org/glossary/canon/  (last visited Apr. 7, 2022).

[5] When the National Church adopted the Dennis Canon, the Canon was actually numbered I.6.4.  *Journal of the General Convention of the Protestant Episcopal Church in the United States of America -otherwise known as The Episcopal Church 1979* B-60 (Sept. 13, 1979), https://www.episcopalarchives.org/sites/default/files/ publications/1979_GC_Journal.pdf.  However, the 2006 Constitution and Canons of the National Church, which are in the record on appeal before us, number the Dennis Canon as I.7.4.

Canons permitting the ordination of women as priests.[6]  Second, the National Church did so in apparent response to the Supreme Court's suggestion in *Jones* that a trust could be created under which the National Church would have beneficial ownership of Parish property.[7]

The Dennis Canon provides,

> All real and personal property held by or for the benefit of any Parish, Mission or Congregation is held in trust for this Church and the Diocese thereof in which such Parish, Mission or Congregation is located.  The existence of this trust, however, shall in no way limit the power and authority of the Parish, Mission or Congregation otherwise existing over such property so long as the particular Parish, Mission or Congregation remains part of, and subject to this Church and its Constitution and Canons.

---

[6] *See* Valerie J. Munson, *Fraud on the Faithful? The Charitable Intentions of Members of Religious Congregations and the Peculiar Body of Law Governing Religious Property in the United States*, 44 Rutgers L.J. 471, 502 (2014) (noting "the canon was adopted because of two developments.  First, in 1976, [the National Church] decided to adopt a new Book of Common Prayer and amended its canons to permit the ordination of women priests.  Those actions resulted in local churches disaffiliating from [the National Church] and claiming full property rights in church property"); Jeffrey B. Hassler, Comment, *A Multitude of Sins? Constitutional Standards for Legal Resolution of Church Property Disputes in A Time of Escalating Intradenominational Strife*, 35 Pepp. L. Rev. 399, 414 (2008) ("The *Jones* decision was handed down just three months prior to The Episcopal Church's triennial national General Convention, at which the church was faced with an increasing number of parishes departing in response to significant doctrinal disagreements.  In response to both the departures and the *Jones* decision, the Church's House of Bishops adopted what has come to be known as the 'Dennis Canon' . . . .").

[7] *See* Munson, *supra* note 6, at 502 (noting the second reason for adopting the Dennis Canon "was the Supreme Court's decision of *Jones v. Wolf* in 1979"); Hassler, *supra* note 6, at 414 (noting the National Church adopted the Dennis Canon "[i]n response to both the departures and the *Jones* decision").

Also in 1979, the National Church adopted Canon I.7.5, which provides,

> The several Dioceses may, at their election, further confirm the trust declared under the foregoing Section 4 by appropriate action, but no such action shall be necessary for the existence and validity of the trust.

The Lower Diocese in South Carolina followed the suggestion in Canon I.7.5 at the Annual Diocesan Convention in 1987 and adopted, as part of its own canons, a version of the Dennis Canon. This canon—which we refer to as the Diocesan Canon—provided,

> All real and personal property held by or for the benefit of any Parish, Mission, or Congregation is held in trust for the Episcopal Church and the Protestant Episcopal Church in the Diocese of South Carolina. The existence of this trust, however, shall in no way limit the power and Authority of the Parish, Mission, or Congregation existing over such property so long as the particular Parish, Mission, or Congregation remains a part of, and subject to, the Episcopal Church and the Protestant Episcopal Church in the Diocese of South Carolina.

The 1979 adoption of the Dennis Canon—and its potential effect on Parish property disputes—was widely known in the Episcopal community.[8] In addition, each Parish apparently participated in the 1987 Diocesan Convention at which the Lower Diocese adopted the Diocesan Canon. According to testimony in the Goodstein trial, each Parish was entitled to send "up to four delegates . . . [a]nd . . . any members of the clergy who [were] canonically resident" to every Annual Diocesan Convention. In the 2018 and 2019 Dickson hearings, the National Church cited the apparent fact

---

[8] According to one commentator, "lawyers throughout the country [] were defending local dioceses from dissenting parishes" using "the Dennis Canon []as an important tool in their arsenal." *See* Bernie D. Jones, *supra*, at 187. The commentator further observed that lawyers around the country corresponded with Walter Dennis to report their progress in litigating Dennis Canon property disputes involving disaffiliating churches throughout the 1980s and 1990s. *Id.*

that each Parish had representatives at the 1987 Diocesan Convention as evidence the Parishes were aware of the terms and effect of the Dennis and Diocesan Canons when they took the actions we discuss below.

## B. State Law Requirements to Create a Trust

With this background in mind, we turn to the actions required to create a trust under South Carolina law. Before a court may find that an owner of property has created a trust under South Carolina law, the court must find the party claiming to benefit from the trust has proven several elements, two of which are particularly relevant here. First, the court must find the party creating the trust took present actions—in writing—documenting both the creation of a trust and the placing of specified property in it. Subsection 62-7-401(a)(1)(ii) of the South Carolina Code (2022) provides there must be a "written declaration signed by the owner of property that the owner holds identifiable property as trustee." While the actions to create a trust "must be proved by some writing signed by the party creating the trust," S.C. Code Ann. § 62-7-401(a)(2), the court can look to more than one writing in determining whether a trust has been created, *Foster v. Foster*, 393 S.C. 95, 98, 711 S.E.2d 878, 879 (2011) (citing *Ramage v. Ramage*, 283 S.C. 239, 322 S.E.2d 22 (Ct. App. 1984)); *see also Ramage*, 283 S.C. at 244, 322 S.E.2d at 26 (stating the statute of frauds "is not violated by piecing together the trust instrument from the various documents which were intended to create the trust"). Second, the court must find the documents creating the trust indicate the owner had the present intent for the writings to create a trust for the particular beneficiary. S.C. Code Ann. § 62-7-402(a) (2022) (providing among four other requirements that "A trust is created only if: . . . (2) the settlor indicates an intention to create the trust").

## C. Parish Analysis[9]

Judge Dickson reviewed the Goodstein trial record on the issue of accession and found no Parish created a trust in favor of the National Church or its diocese. He

---

[9] For reference, we have included an Addendum to this opinion which contains a summary of all the potential evidence of "accession" for each Parish. The Parishes are listed in the Addendum in the same order in which we list their disposition below. There were typographical errors in the documents summarized in the Addendum and we chose not to correct them.

ruled the Parishes "merely promised allegiance" to the National Church and "no Parish expressly acceded to the Dennis Canon." To review Judge Dickson's decision—to determine what actions constitute express accession to the Dennis Canon and whether individual Parishes created a trust in favor of the National Church or its diocese—we turn to the actions taken by each individual Parish. Considering the Parishes' knowledge of the Dennis Canon and participation in adopting the Diocesan Canon, we must evaluate the Parishes' actions under South Carolina trust law, including the requirements that the owner take present action coupled with the present intent to create a trust for the beneficiary.

Most of the twenty-nine Parishes remaining in this case amended their governing documents at various times after the National Church adopted the Dennis Canon in 1979. The National Church and the Associated Diocese argue these actions by each Parish constitute express accession to the Dennis Canon. In the pages that follow, we will analyze the actions taken by each individual Parish to determine whether those actions constitute express accession. Whether a Parish took an action is a question of fact, on which we defer to the circuit court if there is any evidence to support the finding. *See Hardy v. Aiken*, 369 S.C. 160, 165, 631 S.E.2d 539, 541 (2006) (noting "a question of fact in a law action [is] subject to an any evidence standard of review when tried by a judge without a jury" (citation omitted)). However, the question of whether an action known to have been taken by a Parish created a trust in favor of the National Church and its diocese under South Carolina trust law is a question of law. This Court does not defer to the circuit court concerning questions of law. *See City of N. Myrtle Beach v. E. Cherry Grove Realty Co., LLC*, 397 S.C. 497, 502, 725 S.E.2d 676, 678 (2012) ("Questions of law are decided with no . . . deference to the trial court." (citation omitted)).

One Parish—Trinity Episcopal Church, Pinopolis—is particularly unlike the other Parishes. The National Church contends Trinity, Pinopolis was required to submit an application for admission into the Lower Diocese in which it was required to state its "willingness to conform to the Constitution and Canons of the General Convention and the Constitution and Canons of this Diocese." There is no such application in the record before us. Thus, as far as we can tell, Trinity, Pinopolis did not take any action that could be argued to have created a trust. Further, as we will explain in Subsection III.B.v, even if Trinity, Pinopolis had submitted an application containing this language, a "willingness to conform" to the Canons does not indicate Trinity, Pinopolis took present action or had the present intent necessary to create a trust under South Carolina trust law. A "willingness" to take action is not itself a

present action; it is the contemplation of future action. Therefore, we find there is no evidence of express accession to the Dennis Canon by the following Parish, and there is no trust in favor of the National Church or the Associated Diocese over its property:

- Trinity Episcopal Church, Pinopolis

The remaining twenty-eight Parishes fall on a spectrum of specific actions alleged to constitute accession, ranging from pledging allegiance to the National Church and its diocese to reciting the Dennis Canon verbatim in their governing documents. For each of the Parishes, we consider the actions taken within its own governing documents adopted after 1979 along with the Dennis Canon and the Diocesan Canon.

### i. Parishes that did nothing more than pledge or affirm allegiance to the National Church and the Lower Diocese and do not mention the Canons

Four Parishes took no more action than to pledge or affirm in their constitutions or bylaws allegiance to the National Church and its teachings, or to acknowledge the National Church and the Lower Diocese's religious authority. For example, The Church of the Epiphany—located in Eutawville, South Carolina—included in its 2002 Bylaws a provision that stated,

> The object and purpose of the corporation is for the support and maintenance of a Church . . . in the [Lower Diocese] for the public worship of Almighty God in accordance with the doctrine and practices of the [National Church] and the [Lower Diocese], together with such other religious, educational and charitable works as may properly be connected therewith.

Nowhere in this provision does Epiphany, Eutawville act in a manner that creates a trust under South Carolina trust law. In these words, Epiphany, Eutawville "merely promised allegiance" to the National Church and the Lower Diocese. Epiphany, Eutawville did not take the necessary present action nor indicate the necessary intent to create a trust.

The other three Parishes in this category included similar provisions in their governing documents. These provisions contain no reference to the Canons of either the National Church or the Lower Diocese. The provisions merely set forth the Parishes' doctrinal beliefs and a promise to follow the religious teachings of the National Church and the Lower Diocese. "Without more," as Chief Justice Beatty wrote in 2017, "this promise cannot deprive them of their ownership rights in their property." 421 S.C. at 251, 806 S.E.2d at 103 (Beatty, C.J., concurring in part and dissenting in part). Consequently, the following Parishes did not expressly accede to the Dennis Canon and did not create a trust under South Carolina trust law:

- The Protestant Episcopal Church, Of The Parish Of Saint Philip, In Charleston, In The State Of South Carolina
- The Protestant Episcopal Church, The Parish Of Saint Michael, In Charleston, In The State Of South Carolina and St. Michael's Church Declaration Of Trust
- Church of the Cross, Inc. and Church of the Cross Declaration of Trust, Bluffton
- The Church of the Epiphany, Eutawville

### ii. Parish that "considered" its canons "null and void" if "in conflict" with the Canons of the National Church or the Lower Diocese

One Parish—The Vestry and Church Warden of the Episcopal Church of the Parish of St. Helena and the Parish of St. Helena Trust—stated it "pledges to adhere to the doctrine, discipline, and worship" of the National Church—similar to the Parishes discussed in Subsection III.B.i—and also provided that any of its bylaws that "may be in conflict with the canons" of the National Church or the Lower Diocese "shall be considered null and void." These provisions are included in St. Helena's 1987 Bylaws. The words "adhere to" may be stronger than the language used by the Parishes discussed in Subsection III.B.i, but the use of the word "pledges" nonetheless contemplates future action, not the present action necessary to satisfy the first element mentioned above. St. Helena's Bylaws do mention the Canons generally in the clause about conflicting canons, but they make no mention of the Dennis Canon. This language does not show a present action necessary to create a trust nor does it indicate the intent necessary to create a trust based on the Dennis Canon. We find the following Parish did not expressly accede to the Dennis Canon and did not create a trust under South Carolina trust law:

- The Vestry and Church Warden of the Episcopal Church of the Parish of St. Helena and the Parish of St. Helena Trust, Beaufort

### iii. Parishes that "operated" or were "organized" pursuant to the Canons of the National Church and the Lower Diocese

Five Parishes stated in their governing documents they were "organized for the purpose of operating an Episcopal Church pursuant to" or "organized pursuant to" the Canons of the National Church and the Lower Diocese. For example, The Church of the Resurrection, Surfside included in its 1983 Bylaws a statement that it "is organized for the purpose of operating an Episcopal Church pursuant to the Constitution and Canons of the [Lower Diocese] and of the [National Church] now in force or as hereafter may be amended." Like the Parish of St. Helena discussed in Subsection III.B.ii, the words contemplate the future action of "operating" a church, not the present action necessary to satisfy the first element mentioned above. We view "organizing" and "operating" a church as different from, and not involving, the disposition of real estate by creating a trust. While the governing documents for these five Parishes do mention the Canons generally, they do not specifically mention the Dennis Canon. Therefore, the following five Parishes did not expressly accede to the Dennis Canon and did not create a trust under South Carolina trust law:

- Christ St. Paul's Episcopal Church, Yonges Island
- The Church of the Resurrection, Surfside
- The Church of St. Luke and St. Paul, Radcliffeboro
- The Vestry and Church Wardens of St. Paul's Church, Summerville
- Trinity Episcopal Church, Edisto Island

### iv. Parish that stated it was "subject to" the Canons of the National Church and the Lower Diocese

One Parish—St. Paul's Episcopal Church of Bennettsville—not only stated in its 2002 Articles of Incorporation that it was "organized under" the Canons of the National Church and the Lower Diocese but also that it was "subject to" the Canons. There is no specific reference to the Dennis Canon. While this is more than simply being "organized under" the Canons, the language "subject to" refers to future

action—in this instance the future action of the drafters of the Canons—not the present action of the property owner that is necessary to satisfy the first element discussed above.[10] In addition, this language gives no indication of the necessary intent to create a trust based on the Dennis Canon.[11] Therefore, the following Parish did not expressly accede to the Dennis Canon and did not create a trust under South Carolina trust law:

- St. Paul's Episcopal Church of Bennettsville, Inc.

> v.   **Parishes that "agreed to be bound by" or "agreed to conform to" the Canons of the National Church and the Lower Diocese**

Three Parishes amended their constitutions or bylaws after the National Church adopted the Dennis Canon in 1979 to include phrases such as we agree "to be bound by" or "to conform to" the Canons of the National Church and the Lower Diocese. There is no specific reference to the Dennis Canon. As with the statements we discussed in Subsections III.B.ii, iii, and iv, we believe these statements contemplate

---

[10] The Dennis Canon provides that any trust in favor of the National Church and the Associated Diocese "shall in no way limit the power and authority of the Parish . . . so long as the particular Parish . . . remains part of, and subject to this Church and its Constitution and Canons." However, as we have already stated, being "subject to" the Canons of the National Church is not itself sufficient to create a trust; there must be a separate present act creating a trust.

[11] St. Paul's, Bennettsville also included in its Bylaws a provision stating, "The Vestry shall be authorized and empowered to acquire and purchase such real and personal property as they may deem necessary for the purpose of the congregation, and the same to sell, transfer, mortgage or authorize the disposition of as they may deem expedient so long as such acts are in accord with the Canons of the Episcopal Church." Although this phrase gives authority to its governing body concerning real and personal property and limits that authority "so long as such acts are in accord with the Canons" of the National Church, it is not evidence St. Paul's, Bennettsville took a present action to satisfy the first element discussed above. Like the phrase "subject to," this provision contemplates future actions by the Parish. For further explanation of the language in St. Paul's, Bennettsville's Bylaws, *see infra* note 13.

how a parish is going to act in the future. They do not show present action coupled with a present intent to create a trust based on the Dennis Canon. For example, The Church of the Redeemer in Orangeburg included in its 2000 Constitution a statement that it "shall conform to the Constitution and Canons of the [National Church], and the Constitution and Canons of the [Lower Diocese], which are now, or hereafter may be enacted by the authority of the same." The phrase "shall conform to" is an agreement to comply with some future requirement; here, the Canons. Future compliance with the Canons is not present action and does not indicate these Parishes had the present intent necessary to create a trust based on the Dennis Canon. Therefore, the following three Parishes did not expressly accede to the Dennis Canon and did not create a trust under South Carolina trust law:

- All Saints Protestant Episcopal Church, Inc., Florence
- The Church of Our Saviour of the Diocese of South Carolina, John's Island
- The Church of the Redeemer, Orangeburg

### vi. Parishes that "adopted" or "acceded to" the Canons of the National Church and the Lower Diocese

Six Parishes amended their constitutions or bylaws after the National Church adopted the Dennis Canon in 1979 and after the Lower Diocese adopted the Diocesan Canon in 1987 to include phrases such as we "adopt" or "accede to" the Canons of the National Church and the Lower Diocese. For example, St. Bartholomew's Episcopal Church's 2005 Bylaws provided, "St. Bartholomew's Episcopal Church accedes to and adopts the Constitution and Canons of the [National Church] and of the [Lower Diocese] and acknowledges this authority accordingly." As we explained, the National Church's Canons include the Dennis Canon and the Lower Diocese's Canons included the Diocesan Canon, both of which recite a trust over "All real and personal property held by or for the benefit of any Parish" in favor of the National Church and its diocese. Therefore, the Parishes that used this language took present action that created the trust the National Church and the Lower Diocese recited in those Canons. While none of these documents specifically mention the Dennis Canon, we find the language "adopt" or "accede to" represents a sufficient affirmative present action—in light of the knowledge these Parishes had of the Dennis and Diocesan Canons—to satisfy the two elements described above. Consequently, the following six Parishes took sufficient actions

indicating the necessary present intent, and each created a trust under South Carolina trust law in favor of the National Church and its diocese:

- The Church of the Good Shepherd, Charleston, SC
- St. Bartholomew's Episcopal Church, Hartsville
- The Vestry and Church Wardens of the Episcopal Church of the Parish of St. John's, John's Island (Charleston)
- St. David's Church, Cheraw
- The Vestry and Church Wardens of the Parish of St. Matthew (St. Matthews, Fort Motte)
- The Vestries and Church Wardens of the Parish of St. Andrew (Old St. Andrew's), Charleston[12]

### vii. Parishes that added the "adopted" or "acceded to" language to their governing documents prior to 1979

Four Parishes included almost identical language within their respective governing documents, but these Parishes amended their governing documents to include the accession language prior to the National Church's adoption of the Dennis Canon in 1979. Unlike the Parishes in the preceding subsection, these Parishes did not take a present action coupled with the present intent to create a trust in favor of the National Church and its diocese after the National Church adopted the Dennis Canon in 1979. When these four Parishes added the "adopt" or "accede to" language to their governing documents, the Dennis Canon did not exist. There is no indication in the record before us that these four Parishes took any present action after 1979 other than to not remove the "adopt" or "accede to" language. The inaction of not removing this language is not present action and does not indicate these Parishes had the present intent necessary to create a trust based on the Dennis Canon. Therefore, the following four Parishes did not expressly accede to the Dennis Canon and did not create a trust under South Carolina law:

- The Church of the Holy Comforter, Sumter
- The Vestry and Church Wardens of St. Jude's Church of Walterboro

---

[12] *See infra* Subsection III.E (discussing revocation of a trust created after January 1, 2006).

- Saint Luke's Church, Hilton Head
- Trinity Church of Myrtle Beach

> ### viii. Parishes that "acceded to" the Canons of the National Church and the Lower Diocese and recognized the Lower Diocese's beneficial interest

Three Parishes are identical to the six Parishes in Subsection III.B.vi, except for the fact that these Parishes went further to recognize the Lower Diocese's beneficial interest in their property. This recognition is additional evidence of these Parishes' intent to create a trust in favor of the National Church and its diocese. For example, the Church of the Holy Cross, Stateburg included in its 2011 Bylaws a statement providing, "the Vestry shall in no case alienate or encumber any of the real and personal property of the corporation without the same having been submitted first to the congregation . . . and having received the affirmative vote thereof for such alienation or encumbrance." Immediately following this provision, Holy Cross, Stateburg included a footnote stating, "Diocesan Canon require [sic] Standing Committee approval." The Standing Committee was a committee of the Lower Diocese authorized to act on behalf of the Lower Diocese in accordance with its Constitutions and Canons. Therefore, Holy Cross, Stateburg not only referenced the Diocesan Canon in 2011 but also demonstrated a recognition that any alienation or encumbrance of its property must first be submitted to the Lower Diocese for approval.[13]

Holy Trinity Episcopal Church, Charleston also recognized the Lower Diocese's beneficial interest in its property in its governing documents. This Parish included a statement, providing,

> The Vestry . . . shall hold, manage and administer all
> Church property including real property which they shall

---

[13] The analysis of whether Holy Cross, Stateburg satisfied the second element discussed above—intent to create a trust—is the same as our analysis for St. Paul's, Bennettsville, but the outcome of the case for the two Parishes is different. This is because Holy Cross, Stateburg took affirmative present action in its 2011 Bylaws to "accede[] to the . . . Canons of the [National Church]," but St. Paul's, Bennettsville merely stated it was "organized under" and "subject to" the Canons.

have power to sell, alienate, mortgage, lease or otherwise deal with and dispose of by deed of other documents executed by the Wardens or one of them upon resolution of the Vestry; provided that the Vestry shall not sell, alienate, mortgage or otherwise encumber the Church property without the written consent of the Bishop and the Standing Committee of the Diocese as provided in [a National Church Canon].

This provision shows Holy Trinity Episcopal Church recognized the National Church and the Lower Diocese's beneficial interest in its property by requiring any alienation or encumbrance of such property first requires the written consent of the Lower Diocese.[14]

The last Parish in this category—Vestry and Church Wardens of the Episcopal Church of the Parish of Christ Church, Mount Pleasant—amended its Bylaws in 1980 to include a provision stating, "In the event Christ Church, Mount Pleasant, S.C. should ever dissolve . . . , the Standing Committee of the [Lower Diocese] shall become the managing body of the corporation, with full power and authority without restriction, to sell or mortgage its property or any part thereof, to convey any or all of its property to the [Trustees]." This provision recognizes the Lower Diocese's successor interest in Christ Church, Mount Pleasant's property. However, by also including the provision "The terms of these By-laws which may be in conflict with the Canons of the [National Church] . . . are hereby amended to conform to such canons," Christ Church made a present amendment to that provision to incorporate the Dennis Canon and to recognize the Lower Diocese's present *beneficial* interest.

---

[14] Trinity Church of Myrtle Beach—discussed in Subsection III.B.vii—also included this language, requiring written consent of the Lower Diocese prior to any alienation or encumbrance of the property, in its 1972 Bylaws and Constitution. However, writing in 1972 prior to the adoption of the Dennis Canon that an action concerning the property first requires consent from the Lower Diocese is exactly the opposite of creating a trust. Rather, this provision simply confirms the property belongs to the Parish even though the Lower Diocese must consent to how the property is encumbered.

Christ Church, Mount Pleasant is different from the other Parishes in this category in that it last amended its Bylaws in 1980. Because this amendment was made seven years before the Lower Diocese adopted the Diocesan Canon, we cannot rely on Christ Church, Mount Pleasant's participation in the Lower Diocese's adoption of the Diocesan Canon as evidence of its intent to create a trust. Nevertheless, we find Christ Church, Mount Pleasant's recognition of the Lower Diocese's beneficial interest in its property, coupled with the statement "accede to the . . . Canons of the [National Church]," demonstrates it satisfied both elements discussed above, and thus did expressly accede to the Dennis Canon through the adoption of its 1980 Bylaws.

Therefore, the following three Parishes took the necessary present actions indicating the necessary present intent, and each created a trust under South Carolina trust law in favor of the National Church and its diocese:

- The Church of the Holy Cross, Stateburg[15]
- Holy Trinity Episcopal Church, Charleston
- Vestry and Church Wardens of the Episcopal Church of the Parish of Christ Church, Mount Pleasant

### ix.     Parish that recited the Dennis Canon in its constitution

One Parish—St. James' Church, James Island, SC—did even more than "accede to" or "adopt" the Canons of the National Church and the Lower Diocese. St. James' Church recited a version of the Dennis Canon in its own constitution, stating, "All real and personal property held by or for the benefit of any Parish . . . is held in trust for the Church and the Diocese thereof . . . ." If "express accession to the Dennis Canon" by "adopting" or "acceding to" the Canons of the National Church and the Lower Diocese is sufficient to create a trust, then verbatim recitation of the Dennis Canon is clearly sufficient as well. Consequently, the following Parish created a trust under South Carolina trust law in favor of the National Church and its diocese:

- St. James' Church, James Island, SC

---

[15] *See infra* Subsection III.E (discussing revocation of a trust created after January 1, 2006).

### D. Parish Analysis Summary

According to the five opinions of the 2017 Court, "express accession to the Dennis Canon" is sufficient to create a trust under South Carolina law. Accordingly, we find "express accession" occurs under the 2017 Court's collective ruling when the governing body of a Parish states after the adoption of the Dennis Canon in an official document of the Parish, such as a constitution or bylaws, that the Parish "adopts" or "accedes to" the Canons of the National Church, coupled with the Parish's knowledge of the Dennis Canon and participation in adopting the Diocesan Canon indicating the present intent to create a trust. The Parish's formal adoption of the constitutional provision or bylaw satisfies the writing and signature requirements of our trust law. Under these circumstances, the formal adoption of the document indicates the governing body of the Parish took the action with the intent of complying with the National Church's demand set forth in the Dennis Canon and thus intentionally created a trust. Under this analysis, we are satisfied ten Parishes created a trust in favor of the National Church and its diocese by their "express accession to the Dennis Canon." The remaining nineteen Parishes, however, either did not take the necessary actions or did not have the requisite intent to create a trust under South Carolina trust law.

### E. Revocation

Because we now hold ten Parishes created a trust in favor of the National Church and its diocese, the question arises whether those trusts are revocable. It is clear no majority of the 2017 Court reached a consensus on a theory of revocation. However, we find it is equally clear that three Justices would have held the trusts in this case, based on express accession to the Dennis Canon, are irrevocable. *See* 421 S.C. at 251, 806 S.E.2d at 103 (Beatty, C.J., concurring in part and dissenting in part) (stating "express accession to the Dennis Canon" creates "an irrevocable trust"); 421 S.C. at 242, 806 S.E.2d at 98 (Hearn, J., concurring) (stating "the trust is irrevocable"); 421 S.C. at 231, 806 S.E.2d at 93 (Pleicones, J., lead opinion) (joining Justice Hearn's opinion). We adhere today to the votes those Justices cast in 2017. This holding is limited to the trusts created by express accession to the Dennis Canon *in this case*. We decline to comment on the revocability—or on any theory of revocability—of trusts created by other churches or parishes.

However, the 2017 Court did not consider the applicability of subsection 62-7-602(a) of the South Carolina Code (2022)—effective January 1, 2006—which

provides, "Unless the terms of a trust expressly provide that the trust is irrevocable, the settlor may revoke or amend the trust. This subsection does not apply to a trust created under an instrument executed before the effective date of this article." The 2017 Court looked only to pre-2006 writings contained in a five-page summary of accession from the National Church, which did not reference any documents created after 2006, that was included in the prior record on appeal. It is clear to this Court the National Church focused only on pre-2006 writings and urged the 2017 Court not to consider the effect of subsection 62-7-602(a).[16] This conclusion is confirmed by Justice Hearn's statement that the statute provided the "answer to any question of revocability: the trust is irrevocable because it was created prior to the implementation of the [South Carolina Trust Code]." *Protestant Episcopal Church in the Diocese of S.C.*, 421 S.C. at 242, 806 S.E.2d at 98 (Hearn, J., concurring). Therefore, we hold the votes cast in 2017 on revocability do not apply to trusts created after 2006.

Two Parishes—the Church of the Holy Cross, Stateburg and the Vestries and Church Wardens of the Parish of St. Andrew, Charleston—took the actions we hold amount to accession *after* January 1, 2006.[17] These trusts, therefore, were presumptively revocable, and there is no direct or circumstantial evidence "expressly" providing these Parishes intended the trusts to be irrevocable. Further, we hold these Parishes revoked the trusts in accordance with South Carolina trust law. *See* S.C. Code Ann. § 62-7-602(c)(2)(C) ("The settlor may revoke or amend a revocable trust: . . . by . . . any other written method, other than a later will or codicil, delivered to the trustee and manifesting clear and convincing evidence of the settlor's intent."). Both of these Parishes amended their respective governing documents with approval from

---

[16] In the five-page summary, the National Church stated, "As a result of these writings having been made before January 1, 2006, and because there has been no evidence showing that at the time the writings were made the parishes intended the trusts to be revocable, the trusts are irrevocable."

[17] The accession language for The Church of the Good Shepherd (Charleston) is quoted from Good Shepherd's 2006 Constitution. Good Shepherd filed a petition for rehearing, arguing it created a trust after January 1, 2006, and thus, created a revocable trust per subsection 62-7-602(a). However, the only indication in the record before us is that this language was not a new addition to the Constitution in 2006. Therefore, we hold Good Shepherd created an irrevocable trust prior to 2006.

their congregations after 2011 to remove the accession language. Therefore, the following Parishes created revocable trusts after January 1, 2006, and revoked the trusts in compliance with South Carolina trust law:

- The Church of the Holy Cross, Stateburg
- The Vestries and Church Wardens of the Parish of St. Andrew (Old St. Andrew's), Charleston

## IV. Second Question before this Court—Ownership of Diocesan and Trustee Property

The second broad question we address in this case is whether the 2017 Court decided the National Church and the Associated Diocese are the beneficiaries of a trust over the Disassociated Diocese's real and personal property and of the trust held by the Trustees. Judge Goodstein ruled there is no trust in favor of the National Church and the Associated Diocese "as to the [Disassociated] Diocese and the Trustees, [because] the Dennis Canon does not apply on its face to them." Judge Dickson ruled the opinions of 2017 considered only Camp St. Christopher, and because the language of the 1951 deed to Camp St. Christopher was not an issue in the case and because the five opinions were "ambiguous on whether the [Disassociated] Diocese or the Defendant [Associated Diocese] is the proper beneficiary of the Trustee's assets," the 2017 Court did not reverse Judge Goodstein's ruling.

We disagree. Three Justices in 2017 decided the Disassociated Diocese and the Trustees hold all of their real and personal property in trust for the benefit of the National Church and the Associated Diocese. 421 S.C. at 230, 806 S.E.2d at 92 (Pleicones, J., lead opinion) ("I would therefore reverse the circuit court's decision . . . to the extent it held that the Disassociated Diocese[ and] the Trustees . . . controlled or owned the disputed real and personal property."); 421 S.C. at 248, 806 S.E.2d at 101 (Hearn, J., concurring) (stating the Associated Diocese "represent[s] the true Lower Diocese of the Protestant Episcopal Church in South Carolina and are therefore entitled to all property, including Camp Saint Christopher"); 421 S.C. at 251 n.29, 806 S.E.2d at 103 n.29 (Beatty, C.J., concurring in part and dissenting in part) ("I would find 'The Trustees of the Protestant Episcopal Church' in the Diocese of South Carolina should retain title to Camp St. Christopher . . . . In my view, the disassociated diocese can make no claim to being the successor to the [Lower Diocese]."). We interpret Chief Justice Beatty's comment that "the disassociated diocese can make no claim to being the successor to the Lower

Diocese" as indicating the 2017 Court did not limit its decision to Camp St. Christopher but applied it to all Diocesan and Trustee property.  We adhere today to the votes those Justices cast in 2017.

## V.    Names, Styles, Emblems, and Service Marks

There is also a dispute in this case regarding which entity owns certain names, styles, emblems, and service marks and whether the 2017 Court ruled on these issues. Judge Goodstein enjoined the National Church and the Associated Diocese from "using, assuming, or adopting in any way, directly or indirectly the names, styles, emblems or marks of" the Parishes or the Disassociated Diocese.  Judge Dickson found "the Federal Court has jurisdiction over matters related to the trademarks, intellectual property, and service marks," and "likewise follows and conforms to" the five opinions of 2017 on these issues.  Although they did not cross appeal on the issue, the Parishes and the Disassociated Diocese argue we should consider the trademark issues because the Justices were "split" on the issues in the five opinions of 2017.

We agree with Judge Dickson that three Justices in 2017 made a final decision that these issues should be litigated in federal court.  421 S.C. at 249 n.28, 806 S.E.2d at 102 n.28 (Beatty, C.J., concurring in part and dissenting in part) ("I express no opinion concerning the rights to the service marks as I believe this determination should remain with the federal court."); 421 S.C. at 288, 806 S.E.2d at 123 (Toal, J., dissenting) ("[B]ecause there is already a pending federal case involving the applicability of the Lanham Act to these exact marks, I would defer to the federal courts regarding the applicability of federal copyright law."); 421 S.C. at 251 n.31, 806 S.E.2d at 103 n.31 (Kittredge, J., concurring in part and dissenting in part) (joining Justice Toal's opinion except for her conclusion no trust was created).  It is our understanding these issues are currently on appeal to the United States Court of Appeals for the Fourth Circuit.  We defer to the federal courts on these issues.

## VI.    Conclusion

The current Court was given the unwelcomed task of interpreting the collective result of five separate opinions of the Justices of the 2017 Court—none of which gained a majority of votes—because a collective result could not be discerned from the opinions themselves.  The reasoning set forth in this opinion is primarily to determine what the 2017 Court decided as to two broad questions, not to decide those

questions ourselves. Our ruling as to the 2017 Court's answers to these questions yields a final decision for each Parish and the Trustees. However, our decision today is not precedential in any future church property dispute.

Trinity Episcopal Church, Pinopolis and the eighteen Parishes listed in Subsections III.B.i, ii, iii, iv, v, and vii of this opinion did not create a trust in favor of the National Church or its diocese, and thus those nineteen Parishes retain title to their real estate. The ten Parishes listed in Subsections III.B.vi, viii, and ix did create a trust in favor of the National Church and its diocese, which is now the Associated Diocese. However, the two Parishes that created a revocable trust after January 1, 2006, revoked the trust. Thus, those two Parishes retain title to their real estate. We order the governing bodies of the eight Parishes that we hold created an irrevocable trust to prepare an appropriate legal instrument to document the transfer of title of each Parish's real estate to the National Church and the Associated Diocese, confer with counsel for the National Church and the Associated Diocese, and upon agreement to the terms of this instrument, record it in the public record with the appropriate local official.

The real and personal property held in trust by the Trustees is now held for the benefit of the Associated Diocese.

**AFFIRMED IN PART AND REVERSED IN PART.**

**BEATTY, C.J., KITTREDGE, JAMES, JJ., and Acting Justice James E. Lockemy, concur. BEATTY, C.J., and JAMES, J., concurring in separate opinions.**

# ADDENDUM

### 1.     Trinity Episcopal Church, Pinopolis

A letter from the Lower Diocese to Trinity Episcopal Church, Pinopolis explaining how to be admitted into the Lower Diocese which required the Parish to state in its application that it "has been organized in accordance with the Canons of the Diocese and 'its continued existence thereunder for at least a year'" and state its "willingness to conform to the Constitution and Canons of the General Convention and the Constitution and Canons of this Diocese."

The letter is followed by Journal pages containing meeting minutes from the 197th Annual Meeting of the Diocese Convention in 1987. The minutes indicate "Trinity, Pinopolis" and other parishes were to "be seated as parishes in union with this Convention."

### 2.     The Protestant Episcopal Church, Of The Parish Of Saint Philip, In Charleston, In The State Of South Carolina

**1987 Articles of Restatement**:  "The purposes of the said corporation include the preaching and teaching of the Gospel of our Lord and Savior, Jesus Christ, in accord with the Articles of Religion of the Protestant Episcopal Church in the United States of America; the administering of the sacraments and other rites and ceremonies of the said Church as set forth in its Book of Common Prayer; and, generally, ministering to the needs, especially spiritual, of its members, visitors and the community at large."

**2003 Bylaws**:  "The Book of Common Prayer, and administration of the Sacraments, and other rites and ceremonies of the Church, according to the use of the Protestant Episcopal Church in the United States of America, shall be used in the Church."

### 3.     The Protestant Episcopal Church, The Parish Of Saint Michael, In Charleston, In The State Of South Carolina and St. Michael's Church Declaration Of Trust

**1989 Bylaws**:  "St. Michael's acknowledges the authority of the Protestant Episcopal Church in the Diocese of South Carolina (the 'Diocese') and of the Protestant Episcopal Church in the United States of America (the 'National Church')."

**4. Church of the Cross, Inc. and Church of the Cross Declaration of Trust, Bluffton**

**2003 Bylaws**: "The object and purpose of the corporation is for the support and maintenance of a Church in the general area of Bluffton, South Carolina, in the Episcopal Diocese of South Carolina for the public worship of Almighty God in accordance with the doctrine and practices of the Episcopal Church in the United States of America and of the Diocese of South Carolina, together with such other religious, educational and charitable works as may properly be connected therewith."

**5. The Church of the Epiphany, Eutawville**

**2002 Bylaws**: "The object and purpose of the corporation is for the support and maintenance of a Church in the general area of Eutawville, South Carolina in the Protestant Episcopal Diocese of South Carolina for the public worship of Almighty God in accordance with the doctrine and practices of the Protestant Episcopal Church in the United States of America and the Diocese of South Carolina, together with such other religious, educational and charitable works as may properly be connected therewith."

**6. The Vestry and Church Wardens of the Episcopal Church of the Parish of St. Helena and The Parish of St. Helena Trust, Beaufort**

**1987 Bylaws**: "BE IT FURTHER KNOWN that this parish from henceforth pledges to adhere to the doctrine, discipline, and worship of the Protestant Episcopal Church in the United States of America."

"Any article or section of these By-Laws which may be in conflict with the canons of the Diocese of South Carolina and the Protestant Episcopal Church of the United States of America, shall be considered null and void."

**7. Christ St. Paul's Episcopal Church, Yonges Island**

**1980 Bylaws**: "[T]his parish is organized for the purpose of operating an Episcopal Church pursuant to the constitution and canons of the Episcopal Church in the

Diocese of South Carolina and of the Episcopal Church in the United States now in force or as hereafter may be adopted."

### 8.    The Church of the Resurrection, Surfside

**1983 Bylaws**:  "The parish is organized for the purpose of operating an Episcopal Church pursuant to the Constitution and Canons of the Protestant Episcopal Church in the Diocese of South Carolina and of the Protestant Episcopal Church in the United States of America now in force or as hereafter may be amended."

"Any article or part of any article or these by-laws which may be in conflict with the Constitution and Canons of the Diocese of South Carolina or with the Protestant Episcopal Church in the United States are void."

### 9.    The Church of St. Luke and St. Paul, Radcliffeboro

**1995 Bylaws**:  "This Parish is organized for the purpose of operating an Episcopal church pursuant to the Constitution and Canons of the Protestant Episcopal Church in the Diocese of South Carolina and of the Protestant Episcopal Church in the United States now in force or as hereafter may be adopted."

"Any article or part of any article or these By-Laws which may be in conflict with the Constitution or Canons of the Diocese of South Carolina or the Protestant Episcopal Church in the United States are void."

### 10.    The Vestry and Wardens of St. Paul's Church, Summerville

**1992 Bylaws**:  "In order to carry out this objective, the Parish is organized pursuant to the Constitution and Canons of the Episcopal Church in the United States of America (ECUSA) and of the Protestant Episcopal Church in the Diocese of South Carolina now in force or as hereafter may be adopted."

### 11.    Trinity Episcopal Church, Edisto Island

**1998 Bylaws**:  "This parish is organized for purpose of opening an Episcopal Church pursuant to the Constitution and Canons of the Diocese of South Carolina and of the Episcopal Church now in force or as hereafter may be adopted."

"Any article or part of any article of these By-Laws which may be in conflict with the Constitution or Canons of the Diocese of South Carolina or the Episcopal Church are void."

## 12. St. Paul's Episcopal Church of Bennettsville, Inc.

**2002 Articles of Incorporation**: "Our purpose is to operate a Parish organized under and subject to the Canons of the Protestant Episcopal Church in the Diocese of South Carolina, as amended from time to time."

**2004 Bylaws**: "The Vestry shall be authorized and empowered to acquire and purchase such real and personal property as they may deem necessary for the purpose of the congregation, and the same to sell, transfer, mortgage or authorize disposition of as they may deem expedient so long as such acts are in accord with the Canons of the Episcopal Church."

"Any article or section of these By Laws which may be in conflict with the present or future Canons of the Diocese shall be considered null and void."

## 13. All Saints Protestant Episcopal Church, Inc., Florence

**1985 Bylaws**: "The By-Laws of All Saints' Church are drawn with the recognition that as a part of the Episcopal Church in the United States of America, we are bound by the Constitution and Canons of the National Church and the Constitution and Canons of the Diocese of South Carolina."

"Any article or Section of these By-Laws which may be in conflict with the present or future Constitution and Canons of the Episcopal Church or the Diocese of South Carolina shall be considered null and void."

## 14. The Church of Our Saviour of the Diocese of South Carolina, John's Island

**1981 Bylaws**: "The purpose of the said proposed Corporation is for the purpose of operating a Mission, organized pursuant and subject to the Canons of the Protestant Episcopal Church in the Diocese of South Carolina as now in force or as hereafter may be amended . . . ."

"This mission is organized for the purpose of operating an Episcopal Church (mission) pursuant to the Constitution and Canons of the Protestant Episcopal Church in the Diocese of South Carolina and of the Protestant Episcopal Church in the United States now in force or as hereafter may be adopted."

**1984 Letter to Lower Diocese**:  "We agree to conform to the Constitution and Canon of the General Convention and the Canon of the Convention of the Diocese."

**2003 Bylaws**:  "The Parish Church of Our Savior acknowledges the authority of the Protestant Episcopal Church in the United States of America in accordance with the Constitution and Canons thereof . . . ."

### 15.    The Church of the Redeemer, Orangeburg

**2000 Constitution**:  "This Church shall conform to the Constitution and Canons of the General Convention of the Protestant Episcopal Church of the United States of America, and the Constitution and Canons of the Convention of the Diocese of South Carolina, which are now, or hereafter may be enacted by the authority of the same. It likewise supersedes all previous Constitutions and Bylaws of said Church."

### 16.    The Church of the Good Shepherd, Charleston SC

**2006 Constitution**:  "It adopts the bylaws and canons of the Protestant Episcopal Church of the United States of America and of the Diocese of South Carolina."

### 17.    St. Bartholomew's Episcopal Church, Hartsville

**2005 Bylaws**:  "St. Bartholomew's Episcopal Church accedes to and adopts the Constitution and Canons of the Protestant Episcopal Church and of the Diocese of South Carolina and acknowledges this authority accordingly.  Any article or section of these By-Laws which may at any time be in conflict with such Canons shall be null and void."

### 18.    The Vestry and Church Wardens of the Episcopal Church of the Parish of St. John's, John's Island (Charleston)

**2006 Constitution and Bylaws**:  "St. John's Church, John's Island, S.C. accedes to and adopts the Constitution and Canons of the Diocese of South Carolina and of the

Protestant Episcopal Church in the United States of America and acknowledges these authorities accordingly."

**1996 Articles of Amendment**:  "The corporation is subject to the Constitution and Canons of the Protestant Episcopal Church in the United States and the Protestant Episcopal Church in the Diocese of South Carolina, as now in force or as may hereafter be amended, including, but not limited to . . . ."

### 19.    St. David's Church, Cheraw

**1992 Bylaws**:  "The organized Parish of St. David's Church, Cheraw, South Carolina, accedes to and adopts the Constitution and Canons of the Protestant Episcopal Church in the United States of America, and also the Constitution and Canons of the Diocese of South Carolina."

### 20.    The Vestry and Church Wardens of the Parish of St. Matthew (St. Matthews, Fort Motte)

**2004 Bylaws**:  "Saint Matthew's Parish Episcopal Church . . . accedes to the Constitution and Canons of the Episcopal Church in the United States of America, and in the Episcopal Diocese of South Carolina; whenever a conflict exists between the Constitution and By-Laws and the Canons of the Church and Diocese the Canons take precedence."

### 21.    The Vestries and Church Wardens of the Parish of St. Andrew (Old St. Andrew's), Charleston

**2007 Constitution and Canons**:  "The Rector, Wardens, Vestry, and Congregation hereby resolve that should any future changes be made in the Constitution and Canons of the Episcopal Church in the United States or those of the Diocese of South Carolina which may then conflict with any article herein contained, this Constitution and these Canons shall be deemed automatically changed to conform with the national and diocesan constitution and canons."

**2010 Constitution and Canons**:  "Saint Andrew's Parish Church in the Diocese of South Carolina accedes to and adopts the Constitution and Canons of the Episcopal Church in the United States of America, and the Constitution and Canons of the

Diocese of South Carolina, and, accordingly, acknowledges the authority of the same."

### 22.    The Church of the Holy Comforter, Sumter

**1968 and 1974 Constitutions**:  "We, the congregation of the Protestant Episcopal Church of the Holy Comforter, Sumter, South Carolina, County of Sumter, Diocese of South Carolina, as such do hereby acknowledge, accede to and adopt the doctrine, discipline and worship, the Constitution and Canons of the Protestant Episcopal Church in the United States of America and the Constitutions and Canons of the same Church in the Diocese of South Carolina."

### 23.    The Vestry and Church Wardens of St. Jude's Church of Walterboro

**1975 Constitution**:  "The Church of St. Jude's accedes to and adopts the Constitution and Canons of the Episcopal Church in the United States of America and also the Constitution and Canons of the Church in the Diocese of South Carolina and acknowledges their authority accordingly."

### 24.    Saint Luke's Church, Hilton Head

**1973 Bylaws**:  "This Church accedes to and adopts the Constitution, canons, doctrine, discipline, and worship of the Protestant Episcopal Church in the State of South Carolina, and the Protestant Episcopal Church in the United States of America, and acknowledges their authority accordingly."

### 25.    Trinity Church of Myrtle Beach

**1972 Bylaws and Constitution**:  "We . . . accede to and adopt the doctrine, discipline and worship, the Constitution and Canons of the Episcopal Church in the United States of America and the Constitution and Canons of the same Church in the Diocese of South Carolina."

"The Vestry . . . shall hold, manage, and administer all Church property including real property which they shall have power to sell, alienate, mortgage, lease or otherwise deal with and dispose of by deed of other documents executed by the Wardens or one of them; provided that the Vestry shall not sell, alienate mortgage

or otherwise encumber the Church property without the written consent of the Bishop and the Standing Committee of the Diocese as provided in Diocesan or National Church Canons."

## 26. The Church of the Holy Cross, Stateburg

**2011 Bylaws**: "This parish, known as the Church of the Holy Cross, Stateburg having resolved to accept the rules and regulations of the Episcopal Church, in effect, accedes to the doctrine, discipline and worship, the Constitution and Canons of the Protestant Episcopal Church in the United States of America, and the Constitution and Canons in of the same church in the Diocese of South Carolina."

"The Vestry in authorized and empowered to acquire and purchase such real and personal property as it deems necessary for the purpose of the corporation, and the same to sell, alienate, mortgage or other wise dispose of as it may deem expedient. . . . [T]he Vestry shall in no case alienate or encumber any of the real or personal property of the corporation without the same having been submitted first to the congregation . . . and having received the affirmative vote thereof for such alienation or encumbrance." Footnote: "Diocesan Canon require Standing Committee approval."

## 27. Holy Trinity Episcopal Church, Charleston

**2008 Bylaws**: "This Parish, known as Holy Trinity Episcopal Church, does acknowledge and accede to the doctrine, discipline and worship, the Constitution and Canons of the Protestant Episcopal Church in the United States of America and the Constitutions and Canons of the same Church in the Diocese of South Carolina."

"The Vestry . . . shall hold, manage and administer all Church property including real property which they shall have power to sell, alienate, mortgage, lease or otherwise deal with and dispose of by deed of other documents executed by the Wardens or one of them upon resolution of the Vestry; provided that the Vestry shall not sell, alienate, mortgage or other wise encumber the Church property without the written consent of the Bishop and the Standing Committee of the Diocese as provided in the Canon VI, Section 3 of the General Church Canons."

"The terms of these Bylaws which may be in conflict with the Canons of the Protestant Episcopal Church in the United States of America and/or the Diocese of South Carolina are hereby amended to conform to such Canons."

## 28. Vestry and Church Wardens of the Episcopal Church of the Parish of Christ Church, Mount Pleasant

**1980 Bylaws**: "The Episcopal Church of the Parish of Christ Church . . . does acknowledge and accede to the doctrine, discipline and worship, the Constitution and Canons of the Protestant Episcopal Church in the United States of America and the Constitutions and Canons of the same Church in the Diocese of South Carolina."

"In the event Christ Church, Mount Pleasant, S.C. should ever dissolve . . . , the Standing Committee of the Protestant Episcopal Church in the Diocese of South Carolina shall become the managing body of the corporation, with full power and authority without restriction, to sell or mortgage its property or any part thereof, to convey any or all of its property to the trustees of the Protestant Episcopal Church in South Carolina."

"The terms of these By-laws which may be in conflict with the Canons of the Protestant Episcopal Church in the United States of America . . . are hereby amended to conform to such canons."

## 29. St. James' Church, James Island, SC

**2001 Constitution**: "The Parish of St. James' accedes to and adopts the Constitution and Canons of the Protestant Episcopal Church in the United States of America (PECUSA) and to the Constitution and Canons of the Diocese of South Carolina (Diocese of S.C.)."

"All real and personal property held by or for the benefit of any Parish, Mission or Congregation is held in trust for the Church and the Diocese thereof in which such Parish, Mission or Congregation otherwise existing over such property so long as the particular Parish, Mission or Congregation remains a part of, and subject to, this Church and its Constitutions and Canon."

**CHIEF JUSTICE BEATTY:** The primary argument Appellants make to this Court is the 2017 Court made a final decision that all real property formerly owned by the twenty-nine Parishes is now owned by the National Church and the Associated Diocese. It is clear that in 2017 Justice Pleicones and Justice Hearn would have decided all of the Parishes acceded to the Dennis Canon and created a trust in favor of the National Church. 421 S.C. at 230, 806 S.E.2d at 92 (Pleicones, A.J.); 421 S.C. at 245, 806 S.E.2d at 100 (Hearn, J., concurring). It is equally clear, however, that Justice Kittredge would have decided all of the Parishes revoked any trust in favor of the National Church, 421 S.C. at 257, 806 S.E.2d at 106 (Kittredge, J., concurring in part and dissenting in part), and that Justice Toal would have decided none of the Parishes created a trust in favor of the National Church, 421 S.C. at 280, 806 S.E.2d at 119 (Toal, A.J., dissenting). Therefore, as the parties argued to this Court, the underlying question in determining whether the 2017 Court made a final decision is what outcome I intended in my 2017 concurring opinion. As I explained during oral argument in this case, I did *not* vote to end the case in 2017. Rather, I intended to reserve final judgment as to each individual Parish until the circuit court decided on remand whether each individual Parish acceded to the Dennis Canon.

**JUSTICE JAMES:** In his concurrence, Chief Justice Beatty correctly summarizes the five 2017 opinions. Since I was not one of the five authors, I write separately to explain why I concur in Justice Few's majority opinion.

Two members of the 2017 Court deferred to ecclesiastical law and concluded a trust over every Parish's real property was created in favor of the National Church. The other three members of the 2017 Court concluded neutral principles of law must be applied to determine whether a real property trust was created (and I agree). Two of those three members concluded express accession to the Dennis Canon was enough to create a real property trust. The remaining Justice, Justice Toal, concluded South Carolina law required more than express accession and that no real property trusts were created. So, when counting the "votes," two Justices concluded trusts were created through deference to ecclesiastical law, and two Justices concluded trusts were created if the Parish expressly acceded to the Dennis Canon; consequently, the collective result of the 2017 opinion was that a real property trust was created by a Parish if the Parish expressly acceded to the Dennis Canon.

In my view, Justice Toal was correct—express accession to the Dennis Canon was not enough to create a real property trust under South Carolina law; however, that ship has sailed. We have no choice but to honor the collective result of the five 2017 opinions and to apply the "express accession" approach to each Parish's real property. Try as I might, I cannot disagree with Justice Few's dissection of the 2017 opinions and his analysis of each Parish's real property; therefore, I reluctantly concur.